United States District Court
Middle District of Florida
Jacksonville Division

**CAROL BIANCO,**

    *Plaintiff,*

v.                                                    **NO. 3:19-cv-733-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

## Order

Carol Bianco brings this action under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying her application for benefits. Under review is a decision by an Administrative Law Judge ("ALJ") dated October 15, 2018. Tr. 10–21. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 10–21, and the parties' briefs, Doc. 17, Doc. 18, and not fully repeated here. Bianco contends the ALJ improperly rejected a treating-source opinion and failed to consider non-medical reports on her limitations. Doc. 17. Her challenges concern physical impairments only.

## Background

Bianco was born in September 1956. Tr. 66. After working most years since at least 1973, she applied for benefits in April 2016, alleging she had become disabled in January 2016 from Lyme disease, fatigue, forgetfulness, tremors, tripping, "speech block," joint pain and swelling, light sensitivity, severe headaches, difficulty understanding new information, and "trying to count [her] medication." Tr. 67, 185.

The ALJ found Bianco has a severe impairment of degenerative disc disease and non-severe impairments of psoriatic arthritis, arthritis, "left foot acquired hallux rigidus," attention deficit disorder, anxiety, and depression. Tr. 12–13. On the physical impairments the ALJ found non-severe, the ALJ explained, "The claimant has received routine conservative treatment for arthritis and psoriatic arthritis[.] She underwent surgery for her left foot impairment and was not expected to have continuing impairment. By follow-up in June 2018, she classified her pain level as 0–3/10." Tr. 13.

The ALJ separately discussed fibromyalgia:

> There is some indication of a diagnosis of fibromyalgia. In order for a claimant to establish the severe impairment of fibromyalgia, he or she must have a diagnosis from a licensed physician (a medical or osteopathic doctor) that meets all three of the following criteria:
>
> 1. A history of widespread pain that has persisted for more than three months;
>
> 2. At least 11 positive tender points on proper physical examination or repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could have caused these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (SSR 12-2P).
>
> In this case, the records do not establish fibromyalgia. There are no treatment records finding positive tender points on examination. The claimant has a history of widespread pain. However, she has been diagnosed and treated for degenerative disc disease, which accounts for her pain complaints.[1]

---

[1]Social Security Ruling 12-2p explains that the Social Security Administration may find a person has fibromyalgia if medical evidence from an acceptable medical source shows a diagnosis that "is not inconsistent with the other evidence in the person's case record" and

Tr. 19.

The ALJ found Bianco has the residual functional capacity ("RFC") to perform light work with additional limitations: she can never climb ladders, ropes, and scaffolds; she must avoid hazards such as dangerous moving machinery and work at heights; and she can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. Tr. 15.

The ALJ found Bianco can perform her past relevant work as a security guard and "goodwill ambassador" (working downtown to give directions, patrol the streets, and help with events) and therefore is not disabled. Tr. 21.

**Standard**

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (cleaned up).

---

the evidence meets at least one of "two sets of criteria for diagnosing [it]" (described by the ALJ). Social Security Ruling 12-2p, 2012 WL 3104869 (July 25, 2012).

3

## Law & Analysis

The ALJ gave little weight to an opinion from Bianco's treating physician, Reynaldo Fermo Jr., M.D., who specializes in internal medicine. Tr. 19–20. Bianco argues the ALJ's rejection of the opinion is not supported by good cause. Doc. 17 at 17–25.

The SSA evaluates every medical opinion it receives. 20 C.F.R. § 404.1527(c).[2] Generally, the SSA gives "more weight" to a medical opinion from a treating source because the treating source is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture" of the claimant's medical impairment and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). If the SSA finds the treating source's medical opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the SSA will give the opinion "controlling weight." *Id.* § 404.1527(c)(2).

The SSA must "give good reasons" in its decision for the weight it gives a treating source's medical opinion. *Id.* § 404.1527(c)(2). If the SSA does not give a treating source's medical opinion controlling weight, it will consider the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factors that tend to support or contradict the opinion. *Id.* § 404.1527(c).

---

[2]"For claims filed … before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." 20 C.F.R. § 404.1527. Because Bianco filed her claim for benefits before March 27, 2017, *see* Tr. 67, the rules in § 404.1527 apply.

4

A medical source opinion on a dispositive issue reserved to the Commissioner—such as a claimant's RFC or whether he is disabled—is not a medical opinion and not entitled to "any special significance." *Id.* § 404.1527(d).

The SSA "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [their] ability to work." *Id.* § 404.1513(d). Another source includes a non-medical source like a spouse, parent, or friend. *Id.* § 404.1513(d)(4). The SSA "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* § 404.1527(f)(2).

The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). An ALJ must consider all relevant record evidence. 20 C.F.R. § 404.1520(a)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks omitted).

Bianco visited Dr. Fermo monthly between February 2017 and July 2018. Tr. 1099–1134.

In October 2017, when Bianco was 60 years old, Dr. Fermo completed a "Physical Capacity Evaluation" form. Tr. 915–16. He opined that, on most days, Bianco could stand/walk for 10 to 15 minutes; would need a 5 to 10 minute rest period following any standing or walking; could sit for 10 to 15 minutes; would need to stand or move about 5 to 10 minutes after sitting for 10 to 15 minutes; and could repeatedly lift up 10 pounds. Tr. 915. He marked she could never reach overhead with her right

5

or left arms; occasionally otherwise reach with the right and left arm; never handle with either hand; never finger with either hand; and never push or pull with either arm. Tr. 915.

Dr. Fermo opined that, in an 8-hour day, Bianco could never bend, squat, crawl, climb, or operate foot pedals. Tr. 916. He opined that, due to increased symptoms, she often would require additional breaks during a workday beyond a 15-minute morning break, a 30-minute lunch break, and a 15-minute afternoon break. Tr. 916. He opined that she experiences approximately "4+" "bad days per month during which [her] symptoms are increased and [she] would not be able to complete an 8 hour work shift." Tr. 916. A preprinted statement after that and before the signature states, "I assess the above limitations based on first-hand knowledge of my patient's conditions, experience treating patients with similar conditions, and because they are medically reasonable in relation to the patient's condition(s)." Tr. 916.

Addressing Dr. Fermo's opinion, the ALJ stated:

> [I]n October 2017, primary care physician [Dr.] Fermo … completed a medical source statement regarding the claimant. He noted that the claimant could stand/walk or sit 10-15 minutes at a time. She could lift up to 10 pounds repeatedly. She could never reach overhead and occasionally reach in all other directions. She could never handle, finger, push, or pull. Dr. Reynaldo opined that the claimant could never bend, squat, crawl, climb, or operate foot pedal[s]. He noted that she would experience more than four bad days per month during which her symptoms are increased and she would not be able to complete an 8-hour work shift. (Exhibit 18F). The undersigned gave this medical opinion little weight. The level of functioning indicated by Dr. Reynaldo exceeds the severity indicated by the objective findings in the record as documented by her conservative course of treatment for her musculoskeletal impairments. Treatment records from Dr. Reynaldo indicated normal findings on examination. He noted a diagnosis of fibromyalgia, but did not include findings of tender points. He advised the claimant regarding weight loss and in July 2018 encouraged her to exercise (Exhibit 24F/2). The claimant has been limited to a reduced range of light exertion work consistent with the medical evidence of record.

Tr. 19–20.

The ALJ continued,

> Further, a physician contracted for by the State Agency reviewed the evidence and offered their expert opinion that despite the claimant[']s medically determinable impairments [s]he retained the physical ability to perform the exertional demands of a range of light work, consistent with the [RFC] herein, as that term is defined in the regulations (Exhibit 4A). The opinion of the reviewing doctor has been carefully reviewed and their "expert opinion evidence" has been considered in accordance with SSR 17-2p. In this instance the opinion is given significant weight for several reasons. First, this is a disability specialist who had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case available for their review. They considered all of the objective facts at the time they rendered their opinion. Secondly, though they did not have at their disposal the claimant's testimony[,] that testimony specifically as it relates to the claimant's activities of daily living was consistent with the [RFC] opined by the reviewing doctor to a significant degree. Finally, the evidence in total does support in general the conclusion put forth by the State Agency doctor. The evidence is part of the record and entitled to the same probative value accorded "expert opinion" evidence.

Tr. 20.

The state-agency opinion to which the ALJ gave significant weight opined Bianco has one severe impairment: "DDD (Disorders of Back—Discogenic and Degenerative)." Tr. 88.

Bianco has shown error in at least two ways. As she explains,

> [Dr. Fermo] simply did not always report "normal findings on examination[.]" For example, on April 5, 2017, muscle spasms and neuropathy were noted. Tr. 1128. On July 27, 2017, he noted tenderness in the second MCP joint in the bilateral hands. Tr. 1118. On September 9, 2017, Dr. Fermo noted tender PIP and DIP joints on bilateral hands[.] Tr. 1116. Tenderness was also noted on October 27, 2017. Tr. 1114. These findings with relation to her hands support Dr. Fermo's assessed limitations of no overhead reaching, handling, fingering, or pushing/pulling, and only occasional reaching in other directions. …

7

> These assessed limitations are also supported by other "objective findings" in the record. For example, examinations by other providers have noted tenderness and synovitis over the MCP, PIP, and DIP joints. Tr. 849; 862; 887; 1001. Hand x-rays revealed possible asymmetrical inflammatory arthritis affecting the PIP joints of both hands and MCP joint of right hand. Tr. 883. X-rays of the wrist revealed changes suggestive of inflammatory arthritis. *Id.* … Neurologist Dr. Pierre referred Plaintiff to physical therapy/occupational therapy for her hand weakness and cervical radiculopathy. Tr. 992. Rheumatologist Dr. Oza diagnosed synovitis in the left and right hands. Tr. 862.

Doc. 17 at 20–21.

The ALJ also does not explain why limitations to sitting or standing for ten to fifteen minutes at a time would be inconsistent with records showing treatment "with multiple specialists for … diffuse pain, weakness, fatigue, and chronic headaches," recognizing that complaints of back pain alone are "not her primary physical complaint." Doc. 17 at 22.

The ALJ's significant weight to a less restrictive state-agency opinion was another reason for giving little weight to Dr. Fermo's opinion. Tr. 20. The ALJ stated the state-agency consultant "had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case available for their review." Tr. 20. But the consultant provided the opinion in October 2016, Tr. 92, meaning the consultant had no records from "Dr. Fermo, Dr. Pierre (neurologist), Dr. Stanciu (infectious disease specialist), Dr. Bagley (rheumatologist), and Dr. Oza (rheumatologist)" and no records showing diagnoses of "psoriatic arthritis, fibromyalgia, and chronic migraines," Doc. 17 at 24 (and the Commissioner does not contend otherwise). Though the ALJ also said Bianco's testimony on daily activities was consistent with the consultant's RFC, Tr. 20, the ALJ later characterized her description of daily activities as "fairly limited" and said factors weighed against considering her allegations to be "strong evidence," Tr. 20. The ALJ's

8

failure to discuss four letters from family members and a friend that corroborate her testimony about daily activities and other limitations compound the problem.[3]

The ALJ's rejection of Dr. Fermo's opinion suggests the ALJ did not consider Bianco's condition as a whole. The ALJ partially rejected Dr. Fermo's opinion by giving significant weight to a state-agency opinion finding only a back impairment, and the ALJ said consideration of any back impairment accounted for Bianco's pain complaints, Tr. 19, but that statement is not supported by the record showing other limitations that Dr. Fermo considered.

Remand to reconsider Dr. Fermo's opinion is warranted. Because reconsideration of Dr. Fermo's opinion may involve reconsideration of Bianco's testimony or statements by others about her pain and limitations, the Court need not address Bianco's argument on that issue, Doc. 17 at 25–30. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (declining to address certain issues because they were likely to be reconsidered on remand).

## Conclusion

The Court reverses the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and remands the case to the Commissioner with directions to reconsider Dr. Fermo's opinion, to consider or reconsider the third-party statements,

---

[3]The August 2018 statements are from her daughter, a long-time friend, her brother, and another daughter. Tr. 351–358. They include statements like: "My mom used to have a lot of energy, working full time to riding her bike for hour[s] at a time daily. My mom is in constant pain and is always fatigued. I have also noticed that her speech isn't always great," Tr. 351; "She struggles to carry on a simple conversation. … The mental fog, confusion and constant pain has taken its toll. Each time I visit Carol, her knees and feet are swollen. She has a difficult time walking and often[]times, reluctantly, has to use her cane," Tr. 353–54; "She was fully employed for many years and took great pleasure in her work. … She will remain bed-ridden with pain for days," Tr. 356; "Over the past 3 years I have watched and witnessed my mother go from an active and an enjoyful lifestyle to dealing with daily pain of all sorts that at times keeps her in bed for days. My mom's problems became so severe in 2016 that I had her move in with me and my family," Tr. 357.

and to take any other appropriate action. The Court directs the clerk to enter judgment for Carol Bianco and against the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on September 30, 2020.

_____<br>
PATRICIA D. BARKSDALE<br>
*United States Magistrate Judge*

c:   Counsel of record